[Crim. No. 315.   Third Appellate District.—June 11, 1915.]

## In the Matter of the Application of AVERYL HARCOURT, for a Writ of Habeas Corpus.

INSANE PERSONS—COMMITMENT OF—SUFFICIENCY OF FINDINGS.—An adjudication and commitment for insanity is not sufficiently supported by the certificate of the medical examiners and the findings of the judge stating that the patient is insane and is so far disordered in mind as to *possibly* endanger health, person, and property; but where such findings further recite that it is dangerous for life, health, person, and property for such person to be at large, and that her condition is such as to require care and treatment in a hospital for the care and treatment of the insane, the judgment and commitment are sufficiently supported.

ID.—ADJUDICATION OF INSANITY—DANGER TO PUBLIC—FINDINGS.—It is essential in order to justify a judgment or order adjudging a person insane to the extent that his confinement in a hospital for insane persons is necessary to the safety of the public, that there be a finding of the mental condition in the patient from which there will follow more than a mere *possibility* that he will, by reason of such condition, if allowed to remain at large, "endanger life, health, person, and property."

ID. — COMMITMENT OF INSANE PERSONS — POWER OF COURTS. — The power of the superior courts or the judges thereof to examine or try and commit insane persons to the hospitals for the insane, maintained by the state, is derivable alone from legislative enactments, and where the statute prescribes a specific test determinative of the question of insanity, that is to say, where the test thus prescribed requires a finding of a specifically defined character of mental derangement to authorize or justify the commitment of a patient to such hospital, the evidence addressed to the issue and the findings of the judge must measure up to such test in order to sustain the conclusion that the person is afflicted with such form of insanity; otherwise, even though the patient be not wholly of sound mind, the order of commitment is in excess of the legal authority or jurisdiction of the court or judge conducting the inquisition.

ID.—NECESSARY DEGREE OF INSANITY—CONSTRUCTION OF CODE.—Under the provisions of section 2168 to and including section 2171 of the Political Code the degree or character of insanity necessary to be found in one to justify an adjudication that he is insane is, that he must be, by reason of his insanity, a menace to life, health, person, and property, and, therefore, dangerous to be at large, and while it is not necessary in order to support the adjudication and commitment that a finding or conclusion from the evidence that

he is disordered in mind to the degree prescribed should be in the precise language of the statute, it should be so expressed that it clearly appears therefrom, that the patient is so disordered in mind as to endanger life, health, person, and property, and for that reason is dangerous to be at large.

APPLICATION for Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

J. A. Barham, and Phil Ware, for Petitioner.

Clarence F. Lea, for Respondent.

THE COURT.—The petitioner was, by a judge of the superior court of the county of Sonoma, adjudged to be an insane person and thereupon ordered committed to a state hospital for the insane in this state, and, claiming that the court was without legal authority to order the commitment, she has applied to this court for a writ of *habeas corpus* and asks that thus she be released from the restraint of her personal liberty following the said order of commitment.

"The power of the superior courts or the judges thereof to examine or try and commit insane persons to the hospitals for the insane, maintained by the state, is derivable alone from legislative enactments" (*State Com. in Lunacy* v. *Eldridge*, 7 Cal. App. 298, 302, [94 Pac. 597]), and where the statute prescribes a specific test determinative of the question of insanity; that is to say, where the test thus prescribed requires a finding of a specifically defined character of mental derangement to authorize or justify the commitment of the patient to a public hospital for the care and treatment of the insane, then the evidence addressed to the issue and the findings of the judge must measure up to such test in order to sustain the conclusion that the person is afflicted with such form of insanity, otherwise, even though the patient be not wholly of sound mind, the order of commitment is in excess of the legal authority or jurisdiction of the court or judge conducting the inquisition.

The provisions of our laws regulating the examination and the trial of persons charged with being insane and the ad-

judication of insanity in such cases prescribe such a test, and to that test the evidence and the findings of the medical examiners and the court or judge must conform to justify an adjudication of insanity.

Section 2168 of the Political Code provides, among other things, that "whenever it appears by affidavit to the satisfaction of a magistrate of a county, or city and county, that any person therein is so far disordered in his mind as to endanger health, person, or property, he must issue and deliver to some peace-officer, for service, a warrant directing that such person be arrested and taken before a judge of the superior court of the county, for a hearing and examination on such charge." Then follows the prescribed form of the affidavit and the warrant of arrest, in both of which is a statement that the person charged "is so far disordered in mind as to endanger the health, person or property of himself and others."

Section 2169 of said code requires the judge of the superior court before whom the hearing is to take place to compel the attendance of witnesses and "of at least two medical examiners, who must hear the testimony of all witnesses, make a personal examination of the alleged insane person, and testify before the judge as to the result of such examination," etc.

Section 2170 provides that, if the medical examiners, after making the examination and hearing the testimony, believe the patient to be "dangerously insane," they must make a certificate, the prescribed form of which is given, and in which, among other things, they must state that they find either that the person examined is or is not, as the case may be, so far disordered in mind as to endanger health, person, and property.

If the patient is found by the medical examiners to be so mentally deranged as to endanger health, person, and property, and so allege in their certificate filed with or submitted to the judge, it becomes the duty of the latter, if he coincides with the report and conclusion of the examiners, to adjudge the patient insane and make an order that he be confined in a hospital for the care and treatment of the insane, to be designated in such order. (Pol. Code, sec. 2171.)

The form of the adjudication is given in the last cited section, and it is as follows, after reciting with some detail the

proceedings leading thereto: "Now, therefore, after such examination and certificate made as aforesaid, the court being satisfied from the testimony of said witnesses and of the truth of the matters set forth in said certificate that said ........ is insane, and is so far disordered in mind as to endanger health, person, and property, and that it is dangerous for life, health, person, and property for such person to be at large and that h... condition is such as to require care and treatment in a hospital for the care and treatment of the insane. It is, therefore, ordered, adjudged, and decreed that said ............ is insane," etc.

While, as thus shown, the degree or character of insanity necessary to be found in one to justify an adjudication that he is insane is that he must be, by reason of his insanity, a menace to life, health, person, and property, and, therefore, dangerous to be at large, we do not hold, nor should it be held, that it is necessary that a finding or conclusion from the evidence that he is disordered in mind to the degree prescribed should be in the precise language of the statute. If such finding or conclusion, howsoever expressed, clearly shows that the patient is so disordered in mind as to endanger life, health, person, and property, and for that reason is dangerous to be at large, then it is sufficient to support the adjudication and the commitment.

In the case at bar, it will be observed that the certificate of the medical examiners and the findings of the judge are in the exact language of the statute, except in one particular. It reads as follows, quoting from the judge's adjudication: " . . . After such examination and certificate made as aforesaid, the court being satisfied from the testimony of said witnesses, and of the truth of the matters set forth in said certificate, that said Averyl Harcourt is insane, and is so far disordered in mind as to *possibly* endanger health, person, property, and that it is dangerous for life, health, person, and property for such person to be at large, and that her condition is such as to require care and treatment in a hospital for the care and treatment of the insane," etc.

We shall, for the purposes of this case only, assume that the statute is not to be so construed as to bring within the terms of the provisions those persons who may be mentally deranged but whose form of insanity is not such as to render them dangerous to be at large. In other words, we shall

assume that only those insane persons who, while at large, are dangerous to life, health, person, and property, may, within the contemplation of the statute, be subjected to the jurisdiction or power of the authorities for commitment to a hospital for the insane.

The point upon which the petitioner relies for her release through this proceeding revolves around the word "possibly," as used in the certificate of the medical examiners and the findings of the judge. It is contended that the use of that word in the connection in which it is thus employed vitiates both the certificate and the finding, or, in other words, that its use constitutes the finding one which will not support an adjudication of that degree of insanity contemplated by the statute, and that, therefore, the judge, in ordering her to be committed to a state hospital for the insane, exceeded the bounds to which he is restricted by the law in such cases.

There does not appear to be any reasonable ground for doubting that, to justify a judgment or order adjudging a person insane to the extent that his confinement in a hospital for insane persons is necessary to the safety of the public, there must be found in the patient a mental condition from which there will follow more than a mere *possibility* that he will, by reason of such condition, if allowed to remain at large, "endanger life, health, person, and property." The statute does not use the word "possibly" or any term of analogous signification, and certainly the power to commit was not intended by the legislature to be coextensive with or measured by the possibilities of which a deranged human mind is capable. Minds not deranged from the viewpoint of alienists are equally subject to possibilities the crystallization of which would bring disaster to life or person or health or property. What was intended and what the statute plainly means is that the patient, having been found to be insane, must be committed to an institution established for the care and treatment of lunatics only upon the condition that it be further found that the degree or character of his affliction is such as to make it reasonably probable or certain that, if allowed to remain at large, he would, by reason of such mental condition, endanger life, person, etc., or become a menace to the safety of the public.

If, therefore, there was nothing more to the conclusion of the medical examiners as evidenced by their certificate and

the finding of the judge, as the same is set forth in his adjudication, than the part of the finding to which the objection of the petitioner is confined, we would be required to hold the finding to be insufficient to support the adjudication. There is, however, as will readily be perceived, more to the finding than the petitioner appears to see in it. Eliminating entirely the part of the finding to which the petitioner directs her complaint, and we have this remaining: ". . . that said Averyl Harcourt is insane, and that it is dangerous for life, health, person, and property for such person to be at large, and that her condition is such as to require care and treatment in a hospital for the care and treatment of the insane." This finding is obviously not only sufficient to support the judgment or order declaring the petitioner to be insane but amply justifies and supports the commitment.

It follows, therefore, that the writ must be discharged and the petitioner remanded, and it is so ordered.